IN THE UNITED DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| **RICHARD S. LEVICK**<br>1730 Juniper St., NW<br>Washington, DC 20012<br><br>   **Plaintiff**<br> v.<br><br>**KRIS R. KISER**<br>1400 Crestwood Drive<br>Alexandria, VA  22302<br><br>   **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ |

## COMPLAINT

Plaintiff, Richard S. Levick, by and through the undersigned counsel, Sanford M. Saunders, Jr., respectfully files this Complaint against Defendant Kris R. Kiser concerning a house Mr. Kiser "flipped" between 2010 and 2014.  WAMU 88.5 has described the "flipping" of homes as a burgeoning problem in the District of Columbia.  After purchasing the house, Mr. Levick learned that the "den-addition" was illegally constructed and that a majority of the "renovations" were installed improperly and/or with substandard or incorrect materials and were not properly permitted, inspected, or in compliance with the DC building codes.  Many of the renovations either created, or intentionally concealed, latent defects and life threatening conditions, *e.g.*, walls built to mask leaks that allowed for the unchecked growth of toxic mold, multiple instances of junction boxes lacking safety cover plates, exceeding the maximum allowable wiring connections, installed abutting natural gas lines or copper water pipes.  In several cases live wires were not removed but buried with plaster and left in the walls.  Initially Mr. Levick did not realize the daily short and long term risks he took in the house, *i.e.*,

electrocution when he showered and lung damage when he breathed. After a few months, as a matter of self-preservation, Mr. Levick fled to a hotel while all of the defects and safety hazards are being repaired.

He files suit for breach of contract, fraud, negligent misrepresentation, violation of the DC Consumer Protection Procedure Act, and breach of the implied covenant of good faith and fair dealing.

## PARTIES

1. Richard Levick ("Plaintiff" or "Mr. Levick") is an adult resident of the District of Columbia.

2. Kris R. Kiser ("Defendant") is an adult resident of the Commonwealth of Virginia. At the time he committed the improper and illegal actions set forth below, Defendant was a DC resident. He is the President and CEO of the Outdoor Power Equipment Institute. Defendant has purchased numerous properties in DC and then renovated and resold them to unsuspecting buyers such as Mr. Levick.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000) and the parties are citizens of different states.

4. This Court is an appropriate venue pursuant to 28 U.S.C. § 1391 in that 1730 Juniper Street, NW, Washington, DC 20012 is located in the District of Columbia and the defendant made the misrepresentations and committed the tortious acts at issue herein in DC and is subject to personal jurisdiction in Washington D.C.

## FACTS COMMON TO ALL COUNTS

5. The house on 1730 Juniper Street, NW, Washington, DC 20012 was built in 1941 ("Real Property" or the "House").

6. On or about August 20, 2010, Defendant purchased the Real Property for approximately $800,000. After purchasing the House, Defendant began renovating the Real Property. Defendant initiated a significant expansion of the House which included adding a screen porch with a walkout roof deck. Defendant hired several contractors, and later day laborers, to perform the renovations. Many of them were not properly licensed under District of Columbia law.

7. At all times, Defendant exercised control over the renovations and directed the contractors on how to construct or install specific items. On more than one occasion, a contractor refused to follow Defendant's direction on the grounds that it would require violating the DC Building Code. On more than one occasion, a contractor quit rather than follow Defendant's direction to violate the code. In other instances, Defendant fired the contractor. In both scenarios, Defendant personally oversaw and used day laborers to do the physical work.

8. In renovating the Real Property, Defendant both has created and has concealed pre-existing latent structural defects that call into question the structural integrity of the house and whether it is safe to occupy.

9. Defendant put the house on the market in April of 2014, shortly after completing these renovations. This appears to be one of many known properties Defendant purchased, and then re-sold, *i.e.*, "flipped") after renovating it, in eleven years. Despite the fact that Mr. Levick had expressed an interest in purchasing the house, Defendant hired Lee Goldstein of Evers & Company Real Estate, Inc. as his realtor.

3

10. In early 2014, Defendant listed the house for sale. The MLS listing represented that the house contained four bedrooms and a den, and three and a half bathrooms. However, the second bathroom, basement full kitchen, basement Jacuzzi bathroom and the den were built without proper permits and in violation of the DC Construction Codes. Plus, the den was designed and permitted only as a screened porch, and it was then illegally reconfigured and enclosed, without incorporating any insulation in the floor which effectively made it unusable as an all season room. Defendant installed AC and heating, without obtaining proper permits. Thus, the room must be entirely rebuilt and re-permitted. Moreover, Defendant did not submit the construction of this room to the Commission of Fine Arts Review Board for approval. Therefore, Mr. Levick has to apply for approval retroactively with no guarantee of final approval. If rejected, Mr. Levick could be required to demolish the room or significantly re-model it.

11. Defendant's failure to secure the proper pre-construction approval prevents Mr. Levick from legally renting or selling the house as a four bedroom house with a den and three and a half bathrooms unless he invests in an expensive structural remodeling project.

12. Furthermore, Defendant misrepresented the structural design of the house. Specifically, Defendant stated that the den could support multiple stories above it. In reality, at most the den can support a limited additional structure, but only after the previously mentioned repairs to bring it up to code to serve as an enclosed structure. Clearly, as sold, it could not serve as represented. Mr. Levick reviewed the Multiple Listing Service ("MLS") listing for the Real Property prior to purchasing the House. He relied on the information therein (as well as other information, including, but not limited to Defendant's statements and representations made to Mr. Levick) in deciding to purchase the Real Property.

13. Defendant built the den/addition with the following defects: lack of jack studs and headers in wall framing; use of inappropriate fasteners for exterior sheathing; and lack of exterior building envelope.

14. Defendant built the basement foundation in a manner designed and intended to hide major water damage.

15. Defendant installed defective and inappropriate exterior deck floor tile rated only for interior use which buckled and split apart.

16. Defendant improperly installed the HVAC ductwork, *e.g.*, exhaust ducts terminate against an inside wall and wall or floor cavities. Most duct connections were left unsealed allowing major air leaks to spew dust, dirt, mold spores and asbestos insulation particles throughout the house.

17. Defendant installed an improper masonry joint resulting in rotted entry door plaster.

18. Defendant incorrectly used galvanized pipe for gas piping and improperly installed the plumbing. For example, Defendant improperly built water pipes into exterior walls in violation of the DC building code. Defendant failed to properly connect pipes resulting in waste water running behind the walls and into the basement causing water damage.

19. Defendant's deck floor tiles quickly deteriorated, clogging the gutters causing leaks into the den ceiling below. Improper installation of flashing on the roof perimeter was also a contributing factor.

20. Defendant improperly constructed: a) an exterior retaining wall; b) all exterior flagstone work including patios and walkways; c) improper patio and surface yard drains which resulted in erosion of the soil, and d) use of interior rated wood and fasteners for the deck hand

railing pickets which rapidly rotted and detached, seriously compromising the stability of the hand rails.

21. Defendant installed faulty concrete work all across the exterior of the house.

22. Defendant inappropriately remodeled the master bathroom installing two wooden, double-hung windows in the steam shower that rotted out posing a hazard for anyone who used it.

23. The concealment of various defects has caused water damage compromising the integrity of the foundation and a breeding ground for widespread mold growth within the walls and insulation. In addition, these defects resulted in termites nesting in structural framing components and the extensive infestation of black widow spiders and rodents in several areas.

24. Defendant used a non-licensed electrician that resulted in more than 100 electrical code violations. The deficiencies include: uncovered junction boxes; multiple live wires running into a junction box; the absence of conduits; the lack of dedicated circuits for GFI outlets; the presence of extraneous wires; live wires connected by tape; open live wires wrapped around nails; incorrect amperage for the kitchen; junction boxes located on top of flexible natural gas lines; and ungrounded circuits. Further, Defendant left uncapped electrical wires sticking out of the soil. Some individual violations, *e.g.*, oversized wiring holes in structural studs, and certainly the cumulative volumes adversely impact the structural integrity of the house. Several of these violations create the risk of deadly consequences.

25. Defendant failed to install duct tube for the basement bath fans vented into the ceiling cavity and concealed basement bathroom wall leaks and the presence of mold. Further, in order to allow for exterior stairs, Defendant removed a basement window, situated in a window well. The opening was then covered with plywood without filling in and sealing the

...

exterior well. This resulted in major leaks and mold growth behind the wall built in front of it for the new, unpermitted shower.

26. In the seller's disclosures attached to the Sales Contract, Defendant disclosed that he had no actual knowledge of any violations of D.C. permits or other building restrictions affecting the Real Property. However, the proper building permits for interior and exterior structural work had not been obtained and the permits that were obtained were not closed out with an inspection as required.

27. In the seller's disclosures attached to the Sales Contract, Defendant misrepresented that he had no actual knowledge of any structural defects in the walls or floors of the Real Property. In fact, the interior structure of the Real Property is unsound due to, *inter alia*:

    a) Removal of structural support beams in kitchen and basement;
    b) Removal of structural support columns in basement;
    c) Improper or no use of structural support hangers on floor/ceiling joists;
    d) Improper construction techniques in framing office walls and windows;
    e) Lack of bolts and fasteners for connecting joists;
    f) Major cracks in foundation walls masked and left in disrepair; and
    g) Oversized wiring holes in structural studs.

These structural defects are a latent defects that Mr. Levick did not realize at the time he bought the house.

28. In the seller's disclosures attached to the Sales Contract, Defendant misrepresented that he had no actual knowledge of any leaks of evidence of moisture in the basement. In fact, there are leaks in the bathroom wall in the basement and there is evidence that Defendant installed the basement kitchen cabinets in order to conceal them and the resulting water damage.

29. In the seller's disclosures attached to the Sales Contract, Defendant misrepresented that he had no actual knowledge of any windows not in normal working order. In fact, the office windows were improperly framed in several cases.

30. In the seller's disclosures attached to the Sales Contract, Defendant misrepresented that he had no actual knowledge of any defects in the plumbing system. In fact, Defendant improperly installed water pipes into exterior walls in violation of the D.C. Building Code, including, but not limited to improper pitch of drain pipes, improper venting, incorrect installation of water lines in exterior walls, improper design and layout of waste lines, traps and drains, and water pipes built into exterior walls.

31. In the seller's disclosures attached to the Sales Contract, Defendant misrepresented that he had no actual knowledge of any defects in the electrical system, including the electrical fuses, circuit breaks, outlets, or wiring. In fact, Defendant improperly installed each of these electrical components throughout the house in violation of the D.C. Building Code. These violations constituted a safety hazard and, as described in paragraph 24, in certain instances, a clear risk of deadly consequences. In many instances, there is clear evidence of attempts to mask or hide defects within walls.

32. In addition, Mr. Levick discussed the property with the Defendant and Lee Goldstein (Defendant's real estate agent) on several occasions. He expressed particular interest in its size and the spacing between the neighboring properties. The Defendant referred to the size of the yard as a positive element for acquiring and living in the home. Defendant misrepresented the boundaries, for example, he failed to disclose that, previously he had been forced to remove certain tress, and that he had re-planted in roughly the same spot. The size of the property and its boundaries was material to Mr. Levick's decision to purchase the property.

33. Mr. Levick settled on the Real Property on July 9, 2014.

## COUNT I

### (Breach of Contract)

34. Paragraphs 1 and 33 are incorporated by referenced as if fully set forth herein.

35. Defendant entered into a written Sales Contract to sell the Real Property to Mr. Levick pursuant to the terms and conditions in the Sales Contract, including the Seller's Disclosure Statement regarding the .

36. Defendant breached the Sales Contract by selling the Real Property with, *inter alia*, the conditions and defects described in paragraphs 10-31, above.

37. Further, Defendant breached the agreement by using non-licensed electrician which resulted in more than 100 electrical code violations and are a hazard, and create a risk of deadly consequences. There are extensive examples of improper, hazardous and often life threatening electrical wiring directly related to new outlets, switches, fixtures and appliances installed by Defendant. These numerous defects have required and continue to require expensive repairs.

38. Mr. Levick would not have purchased the Real Property had Defendant disclosed the dishonest manner in which the Real Property was illegally renovated.

39. As a direct and proximate result of Defendant's breach of contract, Mr. Levick has suffered financial damage.

WHEREFORE, Mr. Levick seeks judgment against Defendant, under Count I for the following relief:

    A. Compensatory damages of $1,500,000;

    B. Costs, attorney's fees, and post-judgment interest; and

C.  Such other and further relief as the Court deems proper.

## COUNT II

### (Fraud)

40. Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

41. Defendant maliciously, intentionally and willfully misrepresented to Mr. Levick that: the Real Property had four bedrooms, plus a den and three and a half bathrooms, the correct permits had been obtained and taken care of; the den could support more stories, and that the property extended beyond its actual boundaries. Defendant maliciously intentionally and willfully failed to disclose to Mr. Levick that the Real Property was structurally unsound and that the proper permits had not been obtained and the proper inspections had not been completed, that no proper insulation was installed in the addition, that electrical wiring was improperly installed, that remodeling was done with the defects listed, but not limited to those described in paragraphs 10-31.

42. Defendant made these malicious, intentional and willful misrepresentations of materials facts and malicious, "intentional" and willfully failed to disclose material facts in order to deceive Mr. Levick into buying the Real Property for $1,400,000.

43. Mr. Levick reasonably relied on Defendant's misrepresentations by commission and omission. In detrimental reliance on Defendant's malicious, intentional and willful misrepresentations of materials facts and malicious, intentional and willful failure to disclose material facts, Mr. Levick purchased the Real Property for $1,470,000, and has suffered and will continue to suffer financial harm in the form of the cost to repair and cure the numerous material defects to the Real Property and emotional pain and suffering.

WHEREFORE, Mr. Levick seeks judgment against Defendant, under Count III for the following relief:

    A.    Compensatory damages of $1,500,000;

    B.    Punitive damages of $1,500,000; or

    C.    Recession of the transaction;

    D.    Costs, attorney's fees, and post-judgment interest; and

    E.    Such other and further relief as the Court deems proper.

## COUNT III

### (Negligent Misrepresentation)

44.    Paragraphs 1 through 43 are incorporated by reference as if fully set forth herein.

45.    Defendant negligently misrepresented to Mr. Levick that the Real Property had four bedrooms, plus den and 3.5 bathrooms, correct permits and approvals had been obtained and taken care of, the Real Property was structurally sound, and the den could support more stories, and that the property extended beyond its actual boundaries. Defendant negligently failed to disclose to Mr. Levick that the proper permits had not been obtained and the proper inspections have not been called in, that no proper insulation was installed in the addition, that electrical wiring was improperly installed, that remodeling was done with the defects listed, but not limited to those described in paragraphs 10-31. Defendant knew or should have known that the foregoing representations were false and that the failure to disclose would mislead Mr. Levick.

46.    Mr. Levick reasonably relied on Defendant's misrepresentations and has suffered and will continue to suffer financial damage to repair and cure the numerous material defects to the Real Property and emotional pain and suffering.

WHEREFORE, Mr. Levick seeks judgment against Defendant under Count IV for the following relief:

    A.    Compensatory damages of $1,500,000;

    B.    Punitive damages of $1,500,000;

    C.    Costs, attorney's fees, and post-judgment interest; and

    D.    Such other and further relief as the Court deems proper.

### COUNT IV

### (Violation of the Consumer Protection Procedures Act, D.C. Code §§ 28-3904)

47. Paragraphs 1 and 46 are incorporated by reference as if fully set forth herein.

48. Mr. Levick is "consumer" within the meaning of D.C. Code § 28-3901(a)(2).

49. Defendant is a "merchant" within the meaning D.C. Code § 28-3901(a)(3).

50. The sale of the Real Property is "goods and services" within the meaning of D.C. Code § 28-3904.

51. Defendant engaged in unlawful trade practices in violation of D.C. Code § 28-3904 by violating 12 DCMR 105.1, 16 DCMR 3309.3(c)/12 DCMR 109.5, and 16 DCMR 812 by failing to obtain required permits and inspections and failing to perform work in accordance with permit terms and failing to obtain necessary permit.

52. As a direct and proximate result of the violations of the D.C. Consumer Protection Procedures Act by Defendant, Mr. Levick was deceived into purchasing the Real Property for $1,470,000, suffered financial damage to repair and cure the numerous material defects. The Real Property has lost value on account of the stigma laden defects that, even if remedied, will have to be disclosed to prospective buyers and/or renters when Mr. Levick sells or rents the Real Property in future.

53. Defendant falsely represented that certain repairs had been made – when they had not, represented that the House is of highest standard and quality - when it was not, and misrepresented that the renovation and remodeling of the Real Property have been done according to the D.C. Code – when it was not.

54. Mr. Levick reasonably relied on Defendant's misrepresentations and has suffered and will continue to suffer financial damage to repair and cure the numerous material defects to the Real Property and emotional pain and suffering.

WHEREFORE, Mr. Levick seeks judgment against Defendant under Count V for the following relief:

    A.    Compensatory damages of $1,500, 000;

    B.    Punitive damages of $1,500,000;

    C.    Costs, attorney's fees, and post-judgment interest; and

    D.    Such other and further relief as the Court deems proper.

## COUNT V

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

55. Paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56. Defendant entered into a written Sales contract to sell the Real Property to Mr. Levick pursuant to the terms and conditions in the Sales Contract.

57. Defendant breached the implied covenant of good faith and fair dealing contained in the Sales Contract by selling the Real Property that is structurally unsound and remodeled without proper permits and proper inspections, without proper insulation in the addition, with improper electrical wiring installed, and with the defects listed, but not limited to those described in paragraphs 10-31.

58. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Mr. Levick has suffered financial damage.

WHEREFORE, Mr. Levick seeks judgment against Defendant under Count VI for the following relief:

    A.    Compensatory damages of $1,500,000;

    B.    Costs, attorney's fees, and post-judgment interest; and

    C.    Such other and further relief as the Court deems proper.

Dated: November 25, 2015

                                            Respectfully submitted,

                                            /s/ Sanford M. Saunders, Jr.
                                            Sanford M. Saunders, Jr.
                                            DC Bar # 376098
                                            Nicoleta Timofti
                                            DC Bar # 1017121
                                            Greenberg Traurig
                                            2101 L Street, NW
                                            Suite 1000
                                            Washington, DC  20037
                                            (202) 331-3130 (Telephone)
                                            (202) 331-3101 (Facsimile)
                                            saunderss@gtlaw.com
                                            timoftin@gtlaw.com
                                            *Counsel for Plaintiff*