**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICHARD S. LEVICK,<br><br>          Plaintiff,<br><br>     v.<br><br>KRIS R. KISER,<br><br>          Defendant. | Civil Action No. 15-2054 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Richard Levick, brings this action against the defendant, Kris Kiser, from whom the plaintiff purchased a home in Washington, D.C., (the "disputed property") in July 2014. Prior to the sale, the defendant lived in and performed various renovations and additions to the property. Alleging that many of these modifications were faulty or otherwise not in compliance with relevant building codes, the plaintiff asserts a variety of state law claims, including breach of contract, fraud, negligent misrepresentation, violation of the District of Columbia Consumer Protection Procedures Act, and breach of the implied covenant of good faith and fair dealing. Compl. at 2, ECF No. 1. Invoking the Court's diversity jurisdiction, the plaintiff seeks compensatory and punitive damages, as well as reimbursement of his attorneys' fees and costs in bringing this action. Compl. at 2, 9–14. Pending before the Court is the defendant's Motion for Dismissal or, in the Alternative, for a More Definite Statement. *See* Def.'s Mot. Dismiss. ("Def.'s Mot."), ECF No. 9. For the reasons set forth below, the defendant's motion is denied.

I.      **BACKGROUND**

The defendant purchased the disputed property, which is located in northwest Washington, D.C., in 2010. *See* Compl. ¶¶ 5–6. From 2010 to 2014, the defendant occupied the

property and oversaw extensive renovations to the home, including the addition of a screened

porch and accompanying roof deck.  *Id.* ¶¶ 6, 10; Def.'s Mot. at 2.  According to the plaintiff,

many of the renovations were completed by contractors, employed by the defendant, who "were

not properly licensed" in the District.  Compl. ¶¶ 6–7.  The plaintiff alleges that the defendant

exercised significant control over the completion of the renovations and, on at least two

occasions, directed contractors to perform modifications to the home that did not comply with

District of Columbia building codes.  *Id.* ¶ 7.  After completing the renovations, the defendant

listed the disputed property for sale in April 2014.  *Id.* ¶ 9.

The plaintiff purchased the disputed property from the defendant on July 9, 2014, for

$1.47 million.  *Id.* ¶¶ 33, 43; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 7, ECF No. 11.

Before purchasing the property, the plaintiff avers that he reviewed the Multiple Listing Service

("MLS") listing for the property, which indicated that the home contained "four bedrooms and a

den, and three and a half bathrooms."  Compl. ¶¶ 10.  Further, the plaintiff alleges that "the

seller's disclosures attached to" the contract consummating the sale specified that the defendant

"had no actual knowledge" of any:  (1) "violations of D.C. permits or other building

restrictions;" (2) "structural defects in the walls or floors;" (3) "leaks [or] evidence of moisture in

the basement;" (4) "windows not in normal working order;" (5) "defects in the plumbing

system;" and (6) "defects in the electrical system."  Compl. ¶¶ 26–31.  In reliance on these

representations, the plaintiff decided to purchase the property from the defendant.  *Id*. ¶ 12.

Roughly a year after purchasing the disputed property, however, the plaintiff alleges that

he discovered numerous latent structural defects and permitting issues during the course of his

own further renovations to the property.  Pl.'s Opp'n at 7.  Specifically, the plaintiff alleges that,

contrary to the assurances set out in the MLS listing and the Disclosure Statement, the

defendant's renovations to the basement kitchen, two bathrooms, and den included numerous

plumbing, heating and air conditioning, electrical and other issues that were not apparent when

the plaintiff agreed to purchase the property and render those spaces "unusable."  Compl. ¶¶ 10–

32.  The plaintiff further alleges that the defendant failed to obtain necessary permits and built

additions to the home in violation of various District of Columbia building codes.  *Id.* ¶¶ 10–12.

Most notably, the plaintiff alleges that the defendant remodeled the den without permission from

the District of Columbia Commission of Fine Arts Review Board ("CFARB").  *Id.* ¶ 10.  As a

result, the plaintiff contends that he must now apply for approval from the CFARB and, if his

request is rejected, will be required to renovate the home to meet CFARB standards or demolish

the room completely.  *Id.*  Further, the plaintiff asserts that the property cannot be sold or rented

as a "four bedroom house with a den and three and a half bathrooms" without extensive

remodeling in order to comply with D.C. building codes.  *Id.* ¶ 11.

Contending that the defendant was aware of each of these defects and permitting issues

and intentionally concealed this information in selling the disputed property, the plaintiff alleges

five common law and statutory claims under District of Columbia law arising out of the

transaction, including:  (1) breach of contract (Count I), *id.* ¶¶ 34–39; (2) common law fraud

(Count II), *id.* ¶¶ 40–43; (3) negligent misrepresentation (Count III), *id.* ¶¶ 44–46; (4) violation

of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28–3901, *et seq.*

(Count IV), *id.* ¶¶ 47–54; and (5) breach of the common law covenant of good faith and fair

dealing (Count V), *id.* ¶¶ 55–58.  He seeks rescission of the transaction or compensatory and

punitive damages, as well as reimbursement of his attorneys' fees and costs in litigating this

action.  *Id.* at 9–14.

On January 8, 2016, the defendant moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the plaintiff's Complaint, in whole or in part, for failure to state a claim. Def.'s Mot. at 1; FED. R. CIV. P. 12(b)(6).  Alternatively, the defendant moves, pursuant to Federal Rule of Civil Procedure 12(e), for a more definite statement of the plaintiff's claims against the defendant, on the ground that the allegations set out in the Complaint are "so vague or ambiguous that the [defendant] cannot reasonably prepare a response."  FED. R. CIV. P. 12(e); *see* Def.'s Mot. at 1.  The defendant's motion is now ripe for consideration.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 319 (2007). The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).

Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a

complaint must offer "more than labels and conclusions" or a "formulaic recitation of the

elements of a cause of action" to provide "grounds" of "entitlement to relief," *Twombly*, 550

U.S. at 555 (internal quotation marks omitted), and "nudge[] [the] claims across the line from

conceivable to plausible," *id*. at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked

assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557).

In considering a motion to dismiss for failure to state a claim on which relief can be

granted, the court must consider the complaint in its entirety, accepting all factual allegations in

the complaint as true, even if doubtful in fact.  *Twombly*, 550 U.S. at 555.  In considering a Rule

12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the

complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but

is not required to accept the plaintiff's legal conclusions as correct." *Sissel v. United States*

*HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014) (internal quotations and citations omitted).  In addition,

courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to

dismiss, in particular, documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice." *Tellabs, Inc.,* 551 U.S. at 322; *see also English v.*

*District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013); FED. R. CIV. P. 10(c) ("A copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## III.   DISCUSSION

Seeking dismissal of the plaintiff's Complaint, the defendant attacks the sufficiency of

the plaintiff's allegations regarding formal and informal representations the defendant made in

connection with the plaintiff's purchase of the disputed property.  Describing the plaintiff's

allegations as "extraordinarily vague" and "full of holes," the defendant contends that the

plaintiff has failed to plead sufficient facts to demonstrate that the defendant intentionally

concealed any of the alleged defects identified by the plaintiff.  Def.'s Mot. at 2.

Federal jurisdiction in this case is based on diversity of citizenship, 28 U.S.C. § 1332, and

the Court therefore must apply District of Columbia law in considering the sufficiency of the

plaintiff's allegations in support of each of his state statutory and common law claims, *see Burke*

*v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) ("The 'broad command of *Erie*,' of

course, is that 'federal courts are to apply state substantive law and federal procedural law' when

sitting pursuant to their diversity jurisdiction." (quoting *Hanna v. Plumer*, 380 U.S. 460, 465

(1965))); *see also Arias v. DynCorp*, 752 F.3d 1011, 1013 (D.C. Cir. 2014); *Cordoba Initiative*

*Corp. v. Deak*, 900 F. Supp. 2d 42, 46 n.3 (D.D.C. 2012) (applying District of Columbia law in

diversity suit where "[b]oth parties applied District of Columbia law in their motion papers

without engaging in any choice of law analysis"); *Piedmont Resolution, L.L.C. v. Johnston,*

*Rivlin & Foley*, 999 F. Supp. 34, 39 (D.D.C. 1998) (same).  With this precept in mind, the

sufficiency of the plaintiff's allegations in support of each of his state law claims is addressed

*seriatim* below.

> **A.      Motion for Dismissal of the Complaint**
>
> **1.      *Breach of Contract (Count I)***

Under District of Columbia law, to state a claim for breach of contract, "a party must

establish (1) a valid contract between the parties; (2) an obligation or duty arising out of a

contract; (3) a breach of that duty; and (4) damages caused by the breach." *Logan v. LaSalle*

*Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez*, 984

A.2d 181, 187 (D.C. 2009)); *see also Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1005 (D.C. 2013) (same); *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 30 (D.D.C. 2015) (applying District of Columbia law) (same).

Here, the plaintiff alleges that the sale of the disputed property was memorialized through a contract between the parties, consisting of a principal contract (the "Sales Contract") that included and incorporated an attached Seller's Disclosure Statement (the "Disclosure Statement"). *See* Compl. ¶¶ 26–31, 35. Along with other materials related to his purchase of the disputed property, the plaintiff has submitted a copy of the Sales Contract and accompanying Disclosure Statement, each of which was signed by the plaintiff on May 9, 2014. *See* Pl.'s Opp'n, Ex. A ("Purchase Materials"), ECF No. 11-1. In light of the various representations set out in these materials, the plaintiff claims that the defendant "breached the Sales Contract by selling the [disputed property]" with the alleged defects described above. Compl. ¶ 36. Further, the plaintiff alleges that the defendant breached this agreement by "using [a] non-licensed electrician," which the plaintiff alleges "resulted in more than 100 electrical code violations [that were] . . . hazardous and often life threatening . . . requir[ing] expensive repairs." *Id*. ¶ 37. The plaintiff contends that had the defendant "disclosed the dishonest manner in which the [property] . . . [had been] renovated," he would not have contracted to purchase the property from the defendant. *Id.* ¶ 38.

In seeking dismissal of the plaintiff's contract claim, the defendant does not contest the plaintiff's assertion that the Sales Contract is a valid agreement binding the parties. Instead, the defendant argues that the plaintiff fails to identify any particular contractual provision requiring the defendant to remedy the alleged defects. *See* Def.'s Mot. at 3–4. In addition, he invokes the "as-is clause" contained in § 7 of the Sales Contract, Def.'s Mot. at 4, which provides that the

7

purchaser "acknowledges that except as otherwise specified in [the Sales Contract], the Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its AS-IS condition," Purchase Materials at 2.  According to the defendant, even assuming that the disputed property was defective, the plaintiff has failed to "allege that the [Sales Contract] required the house to be sold without defects."  Def.'s Mot. at 4.

In response, the plaintiff asserts that the Sales Contract incorporated the assurances provided by the defendant in the accompanying Disclosure Statement.  Pl.'s Opp'n at 6.  This document includes, among other provisions, representations from the defendant that he was aware of no defects with the plumbing, electrical, heating, or air conditioning systems on the property.  *See* Purchase Materials at 30–36.  In light of these assurances, the plaintiff contends that the defendant's "intentional bad acts and concealment" are not absolved by the general "as-is" clause included in the Sales Contract.  Pl.'s Opp'n at 8.  Rather, the Sales Contract, which includes the Disclosure Statement, obligated the defendant to disclose many of the alleged defects identified by the plaintiff, with the defendant's intentional concealment of these defects constituting breach of that agreement.  *Id*.

Notably, the defendant's briefing is devoid of any argument that the Disclosure Statement, which was signed the same day as the Sales Contract, may not properly be considered part of that contract.  *Cf. Regan*, 134 F. Supp. 3d at 30–32 (agreeing with defendant's argument that a disclosure statement was not incorporated into a sales contract where that statement was delivered to plaintiff after the contract was signed).[1]  In the absence of any such argument, and

---

[1]    The *Regan* court also emphasized the disclosure statement's language stating that the "information [provided herein] is a disclosure only and is not intended to be a part of *any contract* between Buyer and Seller." 134 F. Supp. 3d at 31–32 (emphasis in original). The Disclosure Statement at issue in this case contains the same language, Purchase Materials at 32, and, in fact, is a boilerplate form "approved by the Washington, DC Board of Real Estate" likely identical to the disclosure statement discussed in *Regan*. Purchase Materials at 30; *see Jacobson v. Hofgard*, No. 1:15-cv-00764 (APM), 2016 WL 837923, at *11–12 & n.6 (D.D.C. Mar. 1, 2016) (discussing boilerplate language appearing in forms commonly used in District of Columbia real estate transactions). As

accepting the allegations in the Complaint as true, the plaintiff's averments that the contract gave

rise to a duty to disclose the alleged defects and the defendant intentionally concealed those

defects are sufficient to state a plausible breach of contract claim.

Accordingly, the defendant's motion is denied with respect to the plaintiff's breach of

contract claim set out in Count I.

### 2.      *Fraud (Count II)*

Under District of Columbia law, to make out a claim of fraud, a party must demonstrate:

(1) that a false representation was made; (2) in reference to a material fact; (3) with knowledge

of its falsity; (4) with intent to deceive; and (5) that action was taken in detrimental reliance upon

the representation.  *See Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med.*

*Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005) (quoting *Atraqchi v. GUMC Unified Billing*

*Servs.*, 788 A.2d 559, 563 (D.C. 2002)); *see also Sibley v. St. Albans Sch.*, 134 A.3d 789, 808–09

(D.C. 2016).  Under the Federal Rules of Civil Procedure, "[i]n alleging fraud . . . , a party must

state with particularity the circumstances constituting fraud or mistake," but may allege generally

"[m]alice, intent, knowledge, and other conditions of a person's mind."  FED. R. CIV. P. 9(b).

In support of his fraud claim, the plaintiff alleges that the defendant "maliciously,

intentionally and willfully misrepresented" the condition of the disputed property at the time of

sale, as well as the steps the defendant took to ensure that any renovations prior to the plaintiff's

purchase were performed in conformance with relevant building codes and other regulations.

Compl. ¶¶ 41.  Contending that the defendant made these alleged misrepresentations "in order to

---

another court in this district has explained, however, such boilerplate is not dispositive at the motion to dismiss
stage; were it otherwise, "swindlers [would be] free to extinguish their victims' remedies simply by sticking in a bit
of boilerplate."  *Jacobson*, 2016 WL837923, at *11, *12 n.6 (quoting *Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C.
Cir. 1995)).

deceive," the plaintiff avers that he agreed to purchase the property "[in] detrimental reliance on [the] Defendant's" misrepresentations and efforts to conceal latent defects in the property. *Id.* ¶¶ 42–43.

The defendant counters with two arguments as support for dismissal of the plaintiff's fraud claim.  First, the defendant attacks the plaintiff's contention that he relied on the defendant's assurances in purchasing the disputed property.  Since the plaintiff was permitted to inspect the property prior to consummating the sale, the defendant argues that the plaintiff cannot now claim that he acted in reliance on the defendant's representations regarding the property, and for this reason, "the fifth necessary element [of a fraud claim] fails."  Def.'s Mot. at 6; *see also* Def.'s Reply Opp'n Mot. Dismiss. ("Def.'s Reply") at 4, ECF No. 12.  Second, the defendant contends that, assuming the alleged defects exist, the plaintiff fails to plead facts demonstrating the defendant had "actual knowledge" of these defects, "thus missing the third element of fraud."  Def.'s Mot. at 6.

In response to these contentions, however, the plaintiff emphasizes the gravamen of his Complaint: that the defendant, having performed extensive renovations to the disputed property, intentionally concealed numerous defects from the plaintiff and his inspectors.  Pl.'s Opp'n at 11–12; *see* Compl. at ¶¶ 7–31, 41–43 (explaining that the defendant "exercised control over the renovations" and that "[o]n more than one occasion, a contractor quit rather than follow [the defendant's] direction to violate the [D.C. building] code"; listing the defects alleged to exist in the disputed property; and describing the defendant's misrepresentations including, *inter alia*, "that the house contained four bedrooms and a den [that could support additional construction], and three and a half bathrooms," while several of those rooms were in fact "unusable" as described as a result of defects "concealed" by the defendant).  Accepting these factual

allegations as true, they "allow[] the court to draw the reasonable inference" that the plaintiff relied on misrepresentations of which the defendant had actual knowledge.  *Iqbal*, 556 U.S. at 678.

Accordingly, the Court denies the defendant's Motion for Dismissal of the Complaint with respect to Count II.

### 3.    *Negligent Misrepresentation (Count III)*

Under District of Columbia law, a claim for negligent misrepresentation requires that: (1) the defendant make "a false statement or omit[] a fact that he had a duty to disclose;" (2) the false statement or omission "involve[] a material issue;" and (3) the plaintiff "reasonably rel[y] upon the false statement or omission to his detriment."  *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (quoting *Kumar v. Dist. of Columbia Water & Sewer Auth.*, 25 A.3d 9, 15 n.9 (D.C. 2011)); *see also Ju v. Carter*, No. CV 14-391 (CKK), 2015 WL 5168251, at *8 (D.D.C. Aug. 31, 2015) (applying District of Columbia law).

In his Complaint, the plaintiff asserts that he reasonably relied on the defendant's alleged misrepresentations and failure to disclose certain information, discussed with respect to the plaintiff's fraud claim, *supra* Part III.A.2, regarding the disputed property and that the defendant "knew or should have known that [those] representations were false and that the failure to disclose would mislead [the plaintiff]."  Compl. ¶ 45; *see id.* ¶ 10, 12, 38.

For his part, the defendant makes three arguments for dismissal of this claim.  First, he contends that the plaintiff could not have reasonably relied on the defendant's alleged misrepresentations because he visited the home with inspectors prior to purchasing it.  Def.'s Mot. at 7–8.  Second, he asserts that the "Complaint fails to allege" that the defendant "kn[ew], or at least ought to have known, that [his alleged misrepresentations] were untrue."  *Id.* at 8.

These arguments mirror those made by the defendant with respect to the plaintiff's fraud claim,

and thus, for the reasons explained *supra* Part III.A.2, these two arguments must be rejected.

The defendant's third argument, however, has not yet been addressed.  He avers that the

Complaint "fails to allege a duty in [the defendant] that did not arise in connection with the Sales

Contract," while District of Columbia law provides that any duty underlying a tort "should not

arise from a contract, as a breach of a contractual duty is a breach of the contract."  Def.'s Mot.

at 7; *see Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) ("[A tort

claim] must exist in its own right independent of the contract, and any duty upon which the tort

is based must flow from considerations other than the contractual relationship.").

In response to this contention, the plaintiff does not contest that to state a claim for

negligent misrepresentation, he must plead a duty separable from those duties arising from the

contract, but notes that "[District of Columbia] law requires that sellers disclose in good faith all

information related to the property."  Pl.'s Opp'n at 14.  Although this assertion is correct, *see*

D.C. Code § 42-1302(a), the plaintiff has argued in this case that the disclosure statement

required by District of Columbia law was incorporated into the contract.  Thus, to the extent the

plaintiff's negligent misrepresentation claim is based on the allegations regarding the Disclosure

Statement, the defendant has the better of the argument.  *See Choharis*, 961 A.2d at 1089 ("The

tort must stand as a tort even if the contractual relationship did not exist.").

As a seller of real property, however, the defendant also had a duty, independent of the

required Disclosure Statement, to make "truthful representations about the [disputed property] to

potential buyers."  *Jacobson v. Hofgard*, No. 1:15-cv-00764 (APM), 2016 WL 837923, at *7

(D.D.C. Mar. 1, 2016) (applying District of Columbia law) (citing *Remeikis v. Boss & Phelps,*

*Inc.*, 419 A.2d 986, 990 (D.C. 1980)).  In the Complaint, the plaintiff points to alleged

misrepresentations in the MLS listing and conversations between the plaintiff and the defendant about the disputed property that occurred prior to the signing of the Sales Contract and Disclosure Statement. Compl. ¶ 10, 12. The defendant does not deny that the MLS listing and conversations were misrepresentations of the disputed property, and these allegations must be accepted as true at this stage of the litigation. In view of these alleged misrepresentations, the plaintiff has pleaded facts sufficient to state a claim for negligent misrepresentation.

Accordingly, the Court denies the defendant's Motion for Dismissal of the Complaint with respect to Count III.

### 4.      *Violation of D.C. Consumer Protection Procedures Act (Count IV)*

In contending that the plaintiff has not stated a claim for violation of the Consumer Protection Procedures Act ("CPPA"), D.C. Code. § 28-3904, the defendant's sole argument is that he is not a "merchant" as defined in § 28-3901(a). Def.'s Mot. at 8–9. Under the CPPA, a merchant is defined as "a person, whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services . . . ." D.C. Code § 28-3901. According to the defendant, he is a "private individual" who "does not sell houses 'in the ordinary course of business,'" and for this reason, the plaintiff's CPPA claim necessarily fails. Def.'s Mot. at 8.

In his Complaint, the plaintiff alleges that the defendant has "purchased, and then resold, *i.e.*, 'flipped' [many properties] after renovating" them over an eleven-year period. Compl. ¶ 9. The defendant disputes this allegation as "contradicted by the Complaint itself," which also "admit[s]" that the defendant lived in the disputed property for four years and is "the President and CEO of the Outdoor Power Equipment Institute, . . . a far cry from a buyer and seller of real estate." Def.'s Reply at 5–6. These purported facts are not, however, inconsistent with the

plaintiff's allegations that the defendant "has purchased numerous properties in DC and then

renovated and resold them." Compl. ¶ 2. Accepting all the allegations in the Complaint as true,

and "constru[ing] reasonable inferences from those allegations in the plaintiff's favor," *Sissel*,

760 F.3d at 4, it is plausible that the defendant falls within the CPPA's definition of "merchant."

Accordingly, the Court denies the defendant's Motion for Dismissal of the Complaint

with respect to Count IV.

### 5.    *Breach of the Implied Covenant of Good Faith and Fair Dealing (Count V)*

Under District of Columbia common law, "[e]very contract contains an implied covenant

of good faith and fair dealing," *Sundberg*, 109 A.3d at 1133, which prohibits "do[ing] anything

which will have the effect of destroying or injuring the right of the other party to receive the

fruits of the contract . . . ." *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C.2013) (quoting

*Hais v. Smith*, 547 A.2d 986, 987 (D.C.1988)). "To state a claim for breach of [this covenant], a

plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Id.* (quoting

*Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013)).

Here, the plaintiff asserts that the defendant breached the covenant by selling the disputed

property with the alleged defects. Compl. ¶ 56–57. The defendant counters that "[t]he reasons

[provided by the defendant] that the contract was not breached in general cover this variety of

breach as well," and thus this claim must fail for the same reasons the plaintiff's breach of

contract claim must fail. Def.'s Reply at 3. As discussed *supra* Part III.A.1, however, the

plaintiff has stated a claim for breach of contract resulting from intentional concealment of

defects affecting the disputed property, notwithstanding defendant's arguments to the contrary.

The allegations in support of the plaintiff's breach of the implied covenant of good faith and fair

dealing claim, if true, plausibly show "injur[y to] the right of the [plaintiff] to receive the fruits

14

of the contract" and "bad faith." *Abdelrhman*, 76 A.3d at 891; *cf. id.* at 892 (affirming dismissal

of plaintiffs' complaint because defendant's "alleged representation conformed to the terms of

the contract" and thus it "could not frustrate [the plaintiffs'] enjoyment of the benefits of the

contract, nor could it fairly be characterized as . . . made in bad faith"). Therefore, the plaintiff

has stated a claim for breach of the implied covenant of good faith and fair dealing.[2]

Accordingly, the Court denies the defendant's Motion for Dismissal of the Complaint

with respect to Count V.

### B.     Motion for a More Definite Statement

The defendant also has moved, in the event his motion for dismissal is denied, for a more

definite statement of the plaintiff's claims. Def.'s Mot. at 1. Pursuant to Rule 12(e), a more

definite statement may be ordered where the pleading in question is "so vague or ambiguous that

the [requesting] party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "The

motion must . . . point out the defects complained of and the details desired." *Id.* "Courts are

reluctant to compel a more definite statement pursuant to Rule 12(e)[,] and to prevent Rule 12(e)

from becoming a substitute for discovery, courts will generally deny a motion for a more definite

statement where the information sought may be obtained in discovery." *Feldman v. CIA*, 797 F.

Supp. 2d 29, 42 (D.D.C. 2011) (quoting *Hilska v. Jones*, 217 F.R.D. 16, 21 (D.D.C. 2003)).

---

[2]     The defendant also points out, relevant to this claim as well as the plaintiff's breach of contract claim, that pursuant to the so-called doctrine of merger, "delivery of a deed to real property causes the contract for the conveyance of that property to merge with the deed, and acceptance of the deed terminates any covenants and stipulations in the contract." Def.'s Mot. at 9 (citing *Haviland v. Dawson*, 210 A.2d 551, 554 (D.C. 1965)). Nevertheless, "[a]cceptance of the deed does not terminate any covenants or stipulations in the contract which are not in their nature satisfied by [the] delivery of an instrument whose purpose is to transfer title to the property." *Haviland*, 210 A.2d at 554. In this case, the Sales Contract between the plaintiff and the defendant expressly provided that "[t]he provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein." Purchase Materials at 7. According to the plaintiff's Complaint, certain contractual obligations were not satisfied. Under the clear terms of the contract, those provisions survived delivery of the deed, and therefore the defendant's arguments to the contrary are unavailing.

In support of this motion, the defendant takes exception to the Complaint's failure to set out the precise terms and conditions of the contract at issue or include as an attachment the Sales Contract and related materials, Def.'s Mot. at 4–5, 9, and requests that "this Court order the Plaintiff to file an Amended Complaint with the Sales Contract attached," *id.* at 5; *see id.* at 9; Def.'s Reply at 7.  Although the defendant suggests otherwise in his Reply, *see* Def.'s Reply at 7, the Court is satisfied that the materials filed by the plaintiff as an attachment to his Opposition provide the information requested by the defendant and, in any event, that no additional material need be supplied by the plaintiff prior to the defendant's responsive pleading.  *See* Purchase Materials, ECF No. 11-1.  Furthermore, having concluded that the plaintiff has pleaded sufficient facts supporting his claims for relief notwithstanding the alleged "shortcomings" identified by the defendant, Def.'s Reply at 7, the Court finds that the Complaint is not "so vague or ambiguous" that the defendant cannot reasonably respond to it.  FED. R. CIV. P. 12(e).

Accordingly, the Court denies the defendant's Motion for a More Definite Statement.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's Motion for Dismissal or, in the Alternative, for a More Definite Statement is denied.


Date: September 8, 2016

_____
BERYL A. HOWELL
Chief Judge